The court now calls 120-526 Peggy Zahn v. North American Power & Gas, LLC People of the State of Illinois, Ex-Royal Lisa Madigan Intervene Are you ready to proceed? Yes, I am, Your Honor You ready? Yes, Your Honor Attorney General ready? May it please the Court My name is Greg Blankenship and I represent the plaintiff appellant, Ms. Peggy Zahn I'm sharing my argument time with Mr. Legner from the Solicitor General's Office this morning I'm going to address, while the arguments overlap somewhat, I'll be addressing the extent to which Article 9 and other articles of the Public Utility Act apply to the rates that alternate retail electric suppliers or airies charge Mr. Legner is going to address Article 16, which is the rate relief law, and the extent to which that article provides either exclusive or primary jurisdiction for the ICC to hear claims relating to airies rates North American Power is not a utility It is an airies It doesn't generate electricity It doesn't transmit or distribute electricity over the lines It doesn't read meters It doesn't bill clients It doesn't even collect from the customers NAP consists of employees in Norwalk, Connecticut, who are essentially commodities brokers They buy electricity, like any other market commodity on the open market, and they sell that electricity to Illinois consumers using the utilities distribution network Now, because the airies rates are supposed to be market rates, they don't file those rates with the ICC for approval Instead, their rates are governed by private contracts, like any other free market transaction Nonetheless, even though the rates are not filed or approved by the ICC, the defendant contends that Illinois consumers cannot seek redress in court when an aries charges more than they promised in advertisements or in contracts, just like consumers can do for any other market transaction But we should start with the unassailable point of Illinois law, which is that Illinois courts have original jurisdiction over all justiciable matters And that if the legislature wants to make an exception to that general rule, it must do so explicitly And that's the holding of this court in Employers Mutual v. Skilling And it's entirely consistent with this court's holding in Scheffler v. ComEd, where the court held that where a tariff addresses a particular situation, like the rates that our consumers are being charged, then the tariff controls But when a tariff doesn't address a circumstance, like here, because there is no tariff requiring aries to charge particular rates, then the common law applies Nonetheless, the defendant argues that Article 9, Section 252, and the Public Utility Act as a whole, provides that explicit grant of exclusive jurisdiction But the Public Utility Act itself was amended at the same time that the rate relief law was adopted to specify that the definition of a public utility does not include an aries And this demonstrates a clear intent that provisions relating to the Public Utility Act do not automatically apply to aries Now the defendant contends somehow that the legislature overlooked this definition, or that they couldn't be bothered to specify that the aries are in fact public utilities for Section 252 purposes But to the contrary, the fact that the legislature explicitly defined public utilities as not including aries at the same time that it created the aries, is in clear intent not to include aries in the ICC's exclusive jurisdiction as it reaches public utilities A finding to the contrary would be opposed to canons of interpretation, which require courts to presume that when the legislature uses different terms, it does so for a reason Moreover, the rate relief law likewise defines aries as not including electric utilities, and electric utilities are in turn defined as public utilities that provide electricity So there are two different places in the Public Utility Act and the rate relief law that specify that aries is not a public utility And in addition, the rate relief law itself specifies that Section 252 should not apply to aries That's Article 16, Section 115A, which provides that aries need only comply with certain sections of the Public Utility Act, namely those in Article 8, that concern things like denial of service to vulnerable populations, or standard measures for electricity, or the safety of equipment, or industrial accidents So the legislature knew how to specify when parts of the Public Utility Act applied to aries, and they did so with great specificity It stands to reason, then, that if Article 9, Section 252 was to be included, then they would have specified like they did with the other parts of the Public Utility Act Moreover, the legislature knew how to specify that the ICC had exclusive jurisdiction regarding certain complaints with respect to aries And that's Article 16, Section 125, which establishes rules regarding the transmission and distribution reliability requirements, and provides for a remedy for damages caused to consumers by power outages and surges And the legislature provided that remedies under Section 125 can't be sought, quote, exclusively through the ICC So there's an instance in which the legislature provided for a remedy caused by injuries by an aries, and the legislature was specific that that type of injury was exclusive It stands to reason that if the legislature also intended for all reparation plans to be heard solely by the ICC, it would have used the same type of language it used elsewhere in the rate relief law And, your honors, plans interpretation is most consistent with the purpose of the rate relief law, which is to bring competition and market forces to residential electric markets Under the Public Utilities Act, the ICC determines by means of regulation what a public utility's just and reasonable rate is But the legislature wanted the free market to make that determination with respect to aries, not the ICC And thus, aries set their own rates without any regulatory interference It thus stands to reason that the legislature did not intend for the ICC to continue to determine what a fair rate should be for aries Instead, aries customers have the same remedy any other market participant has, namely, to bring claims under the common law and consumer protection statutes in court Is it your position that there is concurrent jurisdiction? That's correct, your honor. It's not our position that a plaintiff can't complain to the ICC, for example, because disclosures were inadequate or there were other issues But that, as this court has repeatedly held, does not mean that a consumer cannot bring their claims in a court of law Because the exclusive language that this court has consistently held is necessary is entirely missing with respect to rate claims against aries If your case is heard in the circuit court, would the court be necessarily regulating aries pricing and advertising? No, your honor. The court would solely be required to determine two things, essentially The first is the court or the jury would be required to interpret the contract And this is a contract that's intended to be entered into by everyday customers It's not intended to be entered into by sophisticated companies or by government entities It's for everyday consumers And so courts and juries are well-equipped to determine what the meaning and intent of those type of customer agreements are The second part involves demonstrating to the court or the jury that North American Power does not, in fact, charge market rates as it promised in its advertisements and its contract And that simply involves a comparison of market rates, which are publicly available information, and the rate that North American Power charged Now, perhaps with the aid of an expert, that's something that courts and juries do all the time In fact, in the context of securities regulation or antitrust claims or even run-of-the-mill complex disputes where a contract has a rate based upon some kind of market index Those are far more complex issues that juries and courts deal all the time as opposed to here And it's important to realize, it's important to emphasize, I think, Your Honor, that you would be talking about one case against one energy supplier based on what that energy supplier promised its customers It wouldn't be saying all rates have to be below $5 or all rates have to be less than what the utility rate or any kind of widespread pronouncements It would simply say, if you promise customers that you will charge a market rate, you have to charge a market rate And that's the kind of thing that courts and juries do all the time Last point before I defer to Mr. Legner, which is that the view that Aries rates are not regulated and that they're not the province of the exclusive jurisdiction of the ICC is supported by the legislative findings found in Article 16, Section 101A, where the legislature found that competition may in fact decrease cost to consumers But in order to do so, long-standing regulatory relationships must be altered to accommodate competition And that requires a fundamental restructuring of the market That fundamental change refers to the fact that the ICC is no longer involved in rate making And instead that the market should be allowed to determine what rates are and of course the private contracts that individuals entered into So the legislature clearly understood that Aries needed to be treated differently than public utilities in order for competition to take hold And that's directly contrary to the view that the defendant has offered today Because they contend that because there are a lot of regulations where they basically sell electricity like some utilities do That therefore they must be treated the same But that is contradicted not only by the express terms of the statutes, but by the finding of the legislature itself So unless the court has any questions about what I just talked about In the public court brief, one of the parties cited the 5th District's decision in J&J Ventures Do you recall that? I'm sorry to say, Your Honor, it doesn't ring a bell J&J Ventures was just filed by this court about six days ago And I'm wondering if you cited there, will there be a petition to cite additional authority? And you don't know whether your case is infected by J&J Ventures or not, you have no opinion on that I don't, Your Honor, particularly as we don't know what the outcome of the case will be I'll yield my time to Mr. Langton Good morning, Your Honors, Counsel May it please the Court, Brett Lagner, Deputy Solicitor General on behalf of the Intervenor Appellant, People of the State of Illinois Actually, Lisa Madigan, Attorney General of Illinois Your Honors, I'd like to address two main issues today First, that the Illinois Commerce Commission's jurisdiction is not exclusive over these claims pursuant to the rate relief law And second, that the Commission does not have primary jurisdiction over Zahn's claim Before I get to those points, Justice Freeman, I want to address your question about the J&J Ventures case J&J Ventures case involved the appellate decision that's cited And there's been a number of appellate court cases involving J&J Ventures The appellate court decision concerned an exclusive jurisdiction analysis under the Gambling Act, essentially Insofar as the court purported to be consistent with skilling, which I assume insofar as that is presented by this version of the cases before you The J&J Ventures case before you, then I don't think anything that happened there changes our analysis The test is the same, which I'll get to in a second Turning to my first point, the rate relief law, which is Article 16 of the Public Utilities Act Largely deregulated, or at least partially deregulated the electric supply market in Illinois In so doing, it removed from or did not provide the Illinois Commerce Commission any authority to set the rates of alternative retail electric suppliers Or to comment on the composition, the substance of their contracts To now hold that claims regarding exactly those things are within the Commission's exclusive jurisdiction Would be contrary to the plain language intent structure of the Public Utilities Act As well as the intertwined Illinois Consumer Fraud Act As counsel indicated, the circuit courts have general original jurisdiction under the Illinois Constitution In People v. Illinois Industries, this court stated that there must be a clear intent to deprive the courts of this broad jurisdiction In skilling, this court explained that you need a comprehensive statutory regime with some exclusionary language There is no exclusionary language here Under the rate relief law, which is Section 16-115 capital B of the Public Utilities Act It provides that commissions shall have jurisdiction over certain claims against areas But the use of shall by itself is not enough That's what skilling held. In that case involving the Workers' Compensation Act There is a statute that provided that the industrial commission shall have jurisdiction over claims That in itself was not enough, and in fact there was no exclusive jurisdiction in skilling Moreover, as counsel indicated, the rate relief law itself, Section 16-125H Shows an example of the exclusionary language that does provide exclusive jurisdiction There, the General Assembly said that certain remedies under Section 125 involving power outages May be sought exclusively through the Illinois Commerce Commission So in the rate relief law itself, when the General Assembly intended to confer exclusive jurisdiction on the Illinois Commerce Commission It knew how to do so, and it did so expressly And the General Assembly's choice of that language there And its decision to not include that language in Section 16-115 capital B must be given effect Additionally, the statutory regime as a whole does not support or indicate an intent to divest the circuit courts of jurisdiction True, the commission has oversight of formal requirements and certain disclosures areas make No disputing that, but nothing in that says that the commission alone may hear claims regarding Brought by consumers against areas In fact, Section 16-115 capital B, small a, little 2 Provides that the commission has jurisdiction over claims that an area has failed to act in compliance with a contract But only for consumers who have a max demand, a maximum demand of one megawatt For all the other consumers, the commission has no jurisdiction whatsoever over those contract-based claims That indicates that the General Assembly considers nothing inherently necessary about the commission Considering these types of claims brought against an areas by one of its consumers Moreover, Section 16-115 capital A, little B states that areas are subject to Section 2EE of the Illinois Consumer Fraud Act Then, 16-115 capital B, little a, little 1 provides that the commission shall have jurisdiction over claims That an area has failed to comply with its obligations of 115 capital A, including Section 2EE of the Consumer Fraud Act In other words, the two regimes are interrelated But the Public Utilities Act explicitly states that Section 4-601C That the remedies in the Public Utilities Act do not replace the remedies that are available under the Consumer Fraud Act Additionally, the Consumer Fraud Act, Section 2EE, which was added as part of the same public act that established the Rate Relief Law Section 2EE of the Consumer Fraud Act states that the commission may hear certain claims against an areas The permissive, not a shall, not any sort of an intent to grant exclusive jurisdiction And elsewhere, the Consumer Fraud Act in Section 7 permits the Attorney General or the state's attorney to seek certain remedies And 10A allows other people to go into court to seek remedies in the Consumer Fraud Act Including injunctions, damages, and attorney's fees that the commission cannot award Finding exclusive jurisdiction would entirely undermine that regime Additionally, finding primary jurisdiction So the argument is or the suggestion is that the commission has concurrent jurisdiction for these claims But that concurrent jurisdiction is not primary Primary jurisdiction exists when an agency's specialized or technical expertise is necessary to resolve an issue And that's not the case here Because the commission explicitly does not set an area's rates Nor does it have any regulatory control over the content of its contract So the commission is in no expert stance or position to consider the evidence that would be brought by experts In the circuit or district court case in this matter There is no expertise that the commission brings to bear on these specific issues Moreover, the doctrine of primary jurisdiction has never been used to undermine a separate statutory regime And that's what would happen here if the court found that the commission had primary jurisdiction Over these claims against an area under the Consumer Fraud Act Sending those claims to the commission under primary jurisdiction Would entirely remove the explicit statutory grant of parties and the Attorney General To bring claims in court under this Consumer Fraud Act Under area specifically under 2EE And obtain the relief that was sought Or obtain the relief that is provided for under the Consumer Fraud Act Ultimately, the type of claims that the commission has Oh and I would add that in Scheffler Where this court found certain claims within the commission's exclusive jurisdiction Under Section 9-252 of the Act Because they involved reparations, claims against a public utility Not in areas of public utility This court still went on to address on the merits the Consumer Fraud Act claims So even though certain claims were within the exclusive jurisdiction of the commission The Consumer Fraud Act claims against a public utility were still considered on the merits And I see my time is up So for these reasons, I ask this court to find that The Illinois Commerce Commission does not have exclusive jurisdiction over Zahn's claims It may have concurrent jurisdiction But that jurisdiction is not Under the doctor of primary jurisdiction Its jurisdiction does not require deferral of the claims From the court to the commission in the first instance Thank you Thank you very much May it please the court Counsels Angelo Kappas on behalf of the North American Power and Gas LLC This is a case about dispute Counsel, can I start you off by The question about J&J Ventures Is there anything in Have you had a chance to read that opinion? I have not had a chance to read the opinion But I would like to address the J&J Ventures case Because in that case The Gaming Board Act used the exact same language in 16-115B Which specifically states the word shall What's ironic is that The Attorney General's Office today In its brief Wants to argue that Such stringent requirements In exclusionary language is needed According to Skilling And even higher than what Skilling holds In order for there to be exclusive jurisdiction Yet they took the exact opposite stance In arguing before this court several months ago During the oral argument Where the Attorney General's Office stated That shall was enough But distinguishing 16-115B From our case And looking at the Gaming Board Act 16-115B is even stronger on its face Because of use of the word shall And its use and incorporation of Article 10 Looking at By way of background When Ares is a company That purchases electricity On the free market And submits it to the normal consumer Using the long-standing infrastructure That is already in place by the local utility In this case, Conrad Unlike what Zahn's counsel has mentioned here today They do involve billing They do other things than just the commodity broker Ares, the value of them Is that they can distill A retail product price Into a single price That consists of a bundle Of state and federal regulated energy markets And that's what the wholesale market is Ares and public utilities work in tandem To provide the end user with electricity It is the legislature's intent In the Public Utilities Act as a whole To make sure that the ICC Governs this entire process From the beginning to the end To ensure the safety and reliability Of electricity transmission To the Illinois customer As such As counsel, does the ICC Have specialized technical expertise Regarding the operation of Ares? Yes, they do And in our argument On the doctrine of primary jurisdiction They track the Federal Energy Regulatory Commission Which follows the wholesale market rate As stated earlier The wholesale market rate Isn't something as simple As Zahn and the people want to contend It consists of state And federally regulated components And anytime there is State and federal regulated components Referral to an administrative agency is a must The ICC tracks what the wholesale market rate is And is better suited To make a factual determination As to what that is The ICC needs to do so Because it has the ability to do so Proof of that Is Zahn's contention in her complaint That NAPG did not charge the market rate In comparison to ComEd ComEd isn't the market rate The market rate is a bundle of these components And it is a complex thing That the ICC is better suited To make that factual determination For any body Whether it be the court Or administrative agency To determine whether Ares Failed to provide its service or pricing In accordance with the variable rate Based on the wholesale market rate Thus the ICC does have Technical special expertise Also looking to the second factor As to whether primary jurisdiction Should apply here There is a complete need For uniform administrative standards Kellerman specifically stated That one of these elements is needed Whether it's a technical special expertise Or a need for uniform administrative standards Not both But both are present here today The ICC as stated Does have the technical expertise And has a need to completely Have uniform administrative standards The ICC regulates heavily The Ares customer relationship Including marketing of customers The contract terms That are supposed to be in place The adequate disclosure of pricing And even the statutory right To file a complaint The ICC in parts 410 and 412 Go into great detail To set forth a laundry list Of specific terms and provisions That need to be included By every Ares Into a relationship with a customer So as Zahn contends This isn't something that is Completely deregulated Or that rates aren't filed They want to regulate this In a different so By doing so They do it with the overview Of the contract Proof of that Is part 412 specifically requires An Ares to submit its contract To the ICC for review This is done before It is issued a certification order Allowing Ares to submit Electricity transmission To an Illinois consumer In essence By the ICC not filing a complaint Or issuing a certification order Is acquiescence to the validity Of that contract Because it occupies a space As I see a note in its brief Over the heavily regulated area Between a contractual relationship Of an Ares and a consumer What import is it counsel That the ICC says They don't have exclusive jurisdiction They only do so your honor Under 9-252 They specifically state That they do not want to address The breadth of the powers Under 16-115B However they kind of readily admit Through their admissions Of looking at all of their dockets That they already regulate the space By handling consumer complaints Having the ability To order rate relief And resolving disputes Between customers and Ares As to whether or not Rate relief or refunds are entitled So their only comment In their brief Is that they do not believe 9-252 applies However Looking at 9-252 The ICC specifically Tried to distinguish Its ruling in plain language In Chico By stating that We made a so-called Drafting error In stating that A public utility And an Ares Should be defined together What they most likely meant to say Was that a public utility And an Ares Should be treated similarly When an Ares performs A commodity or service To a similar nature To that of a public utility The reason being Is under 8-501 It specifically states That the ICC Shall prescribe rules and regulations Over the furnishing Of any service or commodity Of a similar nature To that of a public utility This is the basis of authority For all of the administrative regulations Over the Ares and customer Contractual relationship Outlined in parts 410 and 412 Specifically The authority notes in part 412 List 8-501 As giving the authority Of the ICC To treat an Ares Like a public utility The staff of the ICC And even the people On behalf of the Attorney General's office Often cite in the ICC dockets That 8-501 Gives them this authority Thus, if they're treated the same Other provisions of the Public Utilities Act should apply Nowhere in the rate relief law Is 9-252 Excluded from applying to an Ares To the contrary Using the parallel analysis Of 8-501 As the staff of the ICC And the people often do In the ICC dockets It is clear that they want To regulate an Ares Like a public utility As such 9-252 should apply The ICC's recognition That it meant a drafting error In Chico Is ironic in the fact that They acknowledge that this happened On numerous other orders Upon its review I submit to this court That drafting error is more plausible If it happened on one occasion Again, what most likely The ICC meant to say Was not that an Ares Is to be defined like a public utility But it should be treated like one When it's performing a service Or a commodity of a similar nature And that is what we're contending We are not contending That an Ares is defined As a public utility We recognize there is A distinction between the two But they are treated the same When they're providing The same service And that is what NAPG is doing They're providing electricity In the same manner That a public utility would Looking at 16-115B Which we believe Is our strongest argument It specifically states That the commission Shall have jurisdiction To entertain and dispose Of any complaint against an Ares The legislation's use Of the word shall Has been defined By the United States Supreme Court And many other courts As being a mandatory reading And is enough here Again, 9-252 That Zahn and people readily concede Gives exclusive jurisdiction To the ICC Doesn't have that Exclusionary language That they so want implemented In 16-115B There is no specific stripping Of courts and jurisdiction And there's no specific use Of the word exclusive Or exclusionary But they want that high burden Put into 16-115B Before exclusive jurisdiction Is read into 16-115B Giving ICC sole discretion Over this matter It is clear that the legislature's Use of the word shall Is enough However, if this court Wants exclusionary language 16-115B offers it With the use of Article 10 It specifically states That 16-115B The commission shall have jurisdiction In accordance with Article 10 Can you cite a case In which the ICC Has forced an Ares To provide reparations? The cases that we have cited Which we've outlined in our brief All dealt with resolutions Between an Ares and a customer Or agreements Technically, the ICC Has not issued any order doing so But in its order Resolving these complaints And overseeing settlement It states that it has the authority Under 16-115B To reimburse customers Between an Ares and a consumer  The fact that it's handled these complaints And the fact that a consumer Can file a complaint Is enough authority to show That the ICC has the power to do so And can do so If the ICC did not have the ability to do so Why would a consumer file a complaint with the ICC? Just for the greater good To avoid an Ares being certified Down the road in the future? No, they're looking for refunds Because they think they were charged too much As such, an Ares If it didn't believe that the ICC Had the ability to order Refund wouldn't go into resolutions The bottom line is here We're dealing with small amounts of money Small refunds that is much better suited For the ICC to handle these claims Because it's better equipped Has the process already in place in doing so Because the process is fairly simple The ICC gets an informal complaint From the consumer Either by phone or in writing After that, it reaches out to the defendant Ares If it can't reach a resolution A formal complaint can be lodged Upon a formal complaint Finally, the administrative law judge Can have a hearing and factual determination As to whether or not an Ares failed to provide A service in accordance with its pricing In terms of its contractor The ICC has the process to do so And can do so in a more efficient manner Again, looking at 16-115B It even says it has the ability to correct Any violation or non-conformance Of the rate relief law We are not claiming that the ICC Has exclusive jurisdiction over a broad range of claims Just only under those That are described in the rate relief law Which is exactly what Zahn is complaining of here today The rate relief law specifically states That the adequate disclosure of pricing Must be put forth in the contract Parts 410 and 412 Specifically list that the variable rate Must list the factors Including the market rate Or any other factors it's going to abide by In its contract It even requires that the ICC's information Is listed in that contract So the consumer knows How to file a complaint For rate relief or refund Those are the broad powers that the ICC has That regulates the exact claims That Zahn is putting here today With the ability of 16-115B to correct that violation And Article 10 Where it specifically is incorporated In 16-115B It has the exclusionary language And is more distinguishable than the J&J Bunches case Because that case only uses The word shall, where ours has shall But includes Article 10 Now Zahn and people want to claim that Article 10 Is administrative in nature If it was, why is it included In 16-115B? Nowhere else in the Public Utilities Act Is any other competitive entity Act, such as Article 13 Dealing with the telecom Does Article 10 reference in any other section? And if it is administrative In nature, why Does Article 10 strip the courts Of jurisdiction, except upon Appeals of an ICC Order granting or denying Rape relief or refunds? That is because it is clear that the legislature Intended 16-115B To be clear on its face That the use of the word shall is enough For exclusive jurisdiction And that Article 10 was to be the exclusionary language Zahn and people want to rely On Skilling to say, well then There is no exclusionary language here, so the jurisdiction should be confirmed Well Skilling, in a lot of the Claims held afterwards, show that Even if it is concurrent jurisdiction, and this is a question of fact It should be before The administrative agency There is no question, and Zahn and the people have to concede That this is a question of fact Zahn is complaining that she was charged Too much for the electricity service Provided by NAPG If she was charged less, none of us would be here today, are we? The fact of the matter Is she is challenging the reasonableness Of the race, and any time There is a challenge of the reasonableness of the race Is a question of fact The people constantly want to refer to The Consumer Fraud Act As being a basis to strip exclusive jurisdiction To the ICC. A lot of the sections That they cite in their briefing today Don't deal with a contractual formation They deal with items Before a contract is formed For example, 2EE deals with Switching customers Or marketing to consumers It doesn't deal with contractual formation What is actually included Meaning you can't fraudulently misrepresent In order to have a vacant switch To have someone here. That's not what's going on A contract is formed, Zahn agreed to a variable rate They're challenging that the variable rate Did not correlate with the wholesale market rate So their Citation to the Consumer Fraud Act Is misplaced with the Facts at hand. More importantly The well-founded principle in Sheffler States that the court Must look at the heart of the matter And the crux of the issue here Is that she was charged too much According to her allegations In the complaint. Again, if she was charged less We wouldn't be here Since her claims are premised On a question of fact Even if there's a claim of fraud As the Country Mutual v. Roberts case holds The case is one That should be before the administrative agency Looking at some of the case law That the Seventh Circuit wanted analyzed Specifically Wernickehoff and SRT Enterprises Wernickehoff is completely distinguishable From the case at hand Because that was dealing with the telecommunications service And the competitive entities in that space Article 13 is completely Different from the rate relief law Because Article 13 Only lists specific Sections outside of the rate relief law Or outside of Its act that will apply To the competitive telecom entities The rate relief law does the opposite It does not exclude 9-252 or anything else From applying Further, at best, Wernickehoff can be used For the proposition by Zahn and people That 9-252 doesn't apply To our case But it doesn't analyze 16-115B And looking at Wernickehoff and Article 13 It further bolsters our opinion That 16-115B Was the exclusive jurisdiction Giving the ICC power Over these claims And that is because Article 13 Uses less strong language For example, it states That the ICC shall have authority Instead of shall have jurisdiction It references In Article 13 actions before the court Where 16-115B Incorporates Article 10 Where it strips the courts of jurisdiction Except upon appeal Article 13 doesn't incorporate Article 10 Moreover, Article 13 Specifically lists when An exclusive jurisdiction will apply To an ICC by stating That the ICC does not have exclusive jurisdiction Unless an entity Elects to do so These are completely different from our case And 16-115B is so strong And that's because As the Seventh Circuit aptly noted That we're dealing with a utility that is a necessity And that is electricity and energy As compared to telecom That is what we're dealing with here Now looking at SRT Enterprise That is exactly on point Some people want to claim that that's an unpublished opinion But they fail to ignore that the Northern District of Illinois Made the exact same analysis And that is a published opinion The problem was Instead of appealing to the Seventh Circuit The plaintiff decided to refile the State Court And then appeal to the First District But the First District not only held that 9-252 Applies to any areas It also held that 16-115B Was the vehicle That the legislature intended To give the ICC-exclusive jurisdiction Over this matter And over these claims Again, looking at all the issues On primary jurisdiction As to whether or not it should apply here The ICC has technical, special expertise And the need for uniform administrative standards It heavily regulates the space And if There was Jurisdiction to the courts first There is the possibility of inconsistent rulings Which is a must for primary jurisdiction The courts could analyze And interpret a state that areas have to abide by Certain regulations in their contracts In order to avoid breach of contract But if The ICC promulgates these rules It could be completely inconsistent With what they already mandate On areas having this contract Again, there is a laundry list in Parts 410 and 412 More importantly, the ICC Has to make a factual determination As to what the wholesale market rate is Before we can determine Whether areas fail to provide A service in accordance with that pricing In terms of its contract In conclusion We submit to this court That the Seventh Circuit's question As to whether or not jurisdiction should lie Exclusively or primarily With the ICC should be answered in affirmative Because 16-115B is strong enough On its face over these claims And 9-252 Should apply because An area is treated like a public utility By the ICC When performing a similar service If not, even with looking at the doctrine Of concurrent jurisdiction This is a question of fact And one that should go before the ICC And one under the doctrine of primary jurisdiction That the ICC is better equipped to handle Because of its special expertise And the need for the Uniform Administrative Standards  If there are no questions, I thank the court for its time Thank you, Counsel May it please the court I'll be splitting the 10 minutes With Mr. Lentner as well I'd like to first start by addressing the notion That Article 8, Section 501 Somehow provides Independent authority to the ICC To have exclusive jurisdiction That statute Only allows the ICC to make rules And regulations for the performance of any service That is similar to a public utility But that section doesn't Provide independent authority To issue reparation orders It just provides For the ICC to allow for practices That are just It's more in the line of a forward-looking injunctive relief It doesn't provide authority For providing remedies for a consumer Who claims that they've been injured Because they've been deceived about what rate they're going to get Or because Ares didn't Follow the contract And indeed, if the legislature Had intended to give the ICC That kind of authority It could have so explicitly provided At the end of the day, the defendant Pieces together a piece Of one article and a piece of another article And argues that There's a comprehensive regulation And so therefore, it must be Exclusive jurisdiction But the legislature knew how to do things much more simply If they had wanted The ICC to have exclusive jurisdiction Then they would have used language Like they did in Section 9-252 They wouldn't have Explicitly defined Ares As not being a public utility Or they could have done what they did In Article 16 Section 125, which is to say That the ICC has exclusive Jurisdiction over claims relating To damages for Power surges It would be surprising if The legislature intended for that Kind of exclusive jurisdiction to exist And they didn't simply say it In the plain language that they did In other statutes I would also like to address The point made that The point that We've compared the rates To ComEd and somehow What the ICC would have to do Is compare the rates that NAP Charged versus the rate that ComEd Charged. That's a mischaracterization Of the complaint in all respects We did note in the Complaint that over time ComEd's rates are reflective of market Rates because of the way In which they purchase electricity But we also pointed out the spot Market, which is the rate that People can buy Like North American Power can buy everyday On the market, which is an excellent Example of what the actual rate Would be in that What the actual market rate would be in that Circumstance And along similar Lines, I would respectfully disagree With counsel for NAP That their Purchase of electricity isn't regulated By some federal agency Or FERC or by the ICC When they buy electricity It's on the open market Whether the spot market where they buy it In advance in a month, there's no regulator Involved in that. NAP simply Contracts with people who Either make electricity themselves or Are themselves brokers And that's the end of the story. There's no involvement In the ICC, which is why The ICC doesn't have the kind of Expertise that Would be necessary to determine Whether or not a consumer Contract had been complied with Because they don't have any greater Expertise than the courts or An expert that the plaintiff would provide Or a common consumer Because that's not a market that's regulated By the ICC So unless the court Has any questions, I'll defer The rest of my time to Mr. Leiker. No questions. Thank you. Thank you, your honors. A couple quick points. First, exclusive jurisdiction under the rate Relief law, and then primary jurisdiction. First, the counsel's argument That shall is enough to exclude A claim to provide for exclusive jurisdiction That's obviously incorrect And directly contrary to scaling. Scaling the statute said shall And the court found that there was no exclusive Jurisdiction. The question is whether Once you have that Language, whether the statutory Regime as a whole Suggests that this is meant to go Exclusively to the agency And the rate relief law as a whole Does not so provide Because among other things It provides that An Aries is Subject to the Requirements of the Illinois Consumer Fraud Act. The Illinois Consumer Fraud Act Provides that a Consumer Fraud Act claim May be brought to the commission But otherwise it may be brought In court. Moreover, the Consumer Fraud Act Provides specific types of relief That may be granted by a court That are outside of the commission's Jurisdiction. The commission's Powers to grant. Is your position here Inconsistent with Positioning the trick in J&J? No, Your Honor. In J&J There was shall language, but again You still need to look at What happened then was Consideration of the statutory structure And in that situation The way that the gambling act read Was consistent with the notion That the General Assembly intended All these matters to go before That agency. But There as opposed to here. So Our position is consistent in the sense that You still need to look at and examine The statutory scheme. And there as opposed to Here as opposed to there, you have For instance this intertwining of an entirely Different Statute, the Consumer Fraud Act With explicit references To the fact that you may bring those actions In court. So The test is still the same As in J&J. It just Comes down to examining very different Statutory structures or statutory Schemes That will be dispositive at the end of the day. Additionally, the rate relief laws Reference for incorporation of Article 10 of the Consumer Fraud Act Is irrelevant to The exclusivity of the commission's Jurisdiction. Article 10 Is a procedural provision That provides when you can file Complaints against the commission. It provides for the Commission to set up investigations Etc. There is Nothing that is jurisdiction expansive Or conferring In Article 10. The provision of Article 10 that they refer To which is 10-201A Which concerns Appeals from interim Rate relief orders. Interim Rate relief orders is a specific type Of relief that is given Under Article 9 rate making Procedures involving public Utilities. Those procedures Explicitly do not apply to Arizona Aries. A commission, the commission Even if it is Considering a claim over which it has Concurrent jurisdiction regarding Aries It does not issue an interim rate Relief order. Because again That is something that is unique to the Article 9 rate making process. That section 10-201A Simply is inapplicable here. And Article 10 is best seen as A procedural Provision article. Additionally, Council Drastically overstates The extent to which the commission Regulates Aries. The commission observes Aries To make sure that they comply with Formalistic requirements of the contract. That they say certain things. And that they Make certain disclosures. It doesn't Regulate the substance of its rate. It doesn't regulate the substance of its Contractual agreement. It doesn't set those matters. Those are not within the commission's Exclusive jurisdiction. Those doing that Is not within the commission's power As it would be with a rate regulation Of a public utility. And it's important to point out that the commission Itself is not here saying that it has Exclusive jurisdiction in its amicus brief. It's explicitly saying it doesn't have Exclusive jurisdiction over Claims. Furthermore, turning to primary jurisdiction The issues Here are contract breach, Misrepresentation, fraudulent misrepresentation, Unjust enrichment, Violation of the implied covenant of good faith And fair dealing. Those are not Things that are within the commerce commission's Technical expertise. Those are things that circuit courts routinely Deal with. Indeed, if The general assembly thought that these matters Would be within the commission's expertise, Then I draw your attention again to Section 16-115 Big B, a little a, Little two, which says that the commission Can hear contract claims Brought by consumer against an Aries unless their demand Is over one megawatt. So a certain class of claims. What that shows is that the commission has No inherent or necessary role To play in the consideration Of these claims. It does not have such important technical Expertise that claims need to go there. Otherwise, all claims by all Consumers against an Aries Could be brought there, contract claims Could be brought there, not just contract Claims by consumers who have a demand Of less than one megawatt. There has been no discussion, no meaningful Discussion of the fact that Exercising a deferral of this Action under the document of primary jurisdiction Would entirely undermine the consumer Fraud aspect, the intertwined Regime of the Consumer Fraud Act. Instead, they try to argue That the Consumer Fraud Act is not implicated. But the Consumer Fraud Act, Section 2EE Says that it governs The disclosures of the rates That an Aries must make To a consumer. And the first cause of action in their Complaint is under the Illinois Consumer Fraud Act that says they Misrepresented the rates they're going To charge. Consumer Fraud is certainly relevant here And that scheme would be entirely Undermined with the finding of either exclusive Or primary jurisdiction in this case. Thank you very much. Thank you. Case number 120526 Peggy Zahn, North American Power and Gas LLC Will be taken under advisement as Agenda number 20. Mr. Blankenship, Mr. Redner, and Mr. Kappas, thank you for your arguments This morning. You're excused at this time. Marshal, the Supreme Court stands Adjourned until 9 a.m. tomorrow morning.